UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


CURTIS PINSON and CRISTI PINSON,
Individually and as Husband and Wife,                                    PLAINTIFFS,

vs.                           CASE NO.: 12-cv-2160-PKH

45 DEVELOPMENT, LLC,
CITI TRENDS, INC.,
CITI TRENDS, INC. d/b/a CITITRENDS,                                    DEFENDANTS.


CITI TRENDS, INC.                                        THIRD-PARTY PLAINIFF,

vs.

BRANDRITE SIGN COMPANY, INC.,                          THIRD PARY DEFENDANT.


**PLAINTIFFS' THIRD AMENDED and SUBSTITUTED COMPLAINT**

COME NOW the plaintiffs, CURTIS PINSON and his wife, CRISTI PINSON, by and

through their attorneys, George H. Niblock, Raymond L. Niblock, and Roxanne D. Blake, all of

The Niblock Law Firm, PLC, and for this, their *THIRD AMENDED AND SUBSTITUTED*

*COMPLAINT* against the Defendants, 45 DEVELOPMENT, LLC, CITI TRENDS, INC., CITI

TRENDS INC d/a/b CITITRENDS, state and allege the following:

## PARTIES

*Plaintiffs*

1.      At the time of the filing of this complaint, Plaintiff CURTIS PINSON (hereinafter "CURTIS PINSON") *was domiciled in, and a citizen and resident of Paradise, Wise County, Texas*.

2.      At the time of the filing of this complaint, Plaintiff CRISTI PINSON (hereinafter "CRISTI PINSON") *was domiciled in, and a citizen and resident of Paradise, Wise County, Texas*.

*Defendants*

3.      *At the time of the filing of this complaint*, Separate Defendant, 45 DEVELOPMENT, LLC (hereinafter "45 DEVELOPMENT") was an Arkansas Domestic Limited Liability Company lawfully *organized* in this state pursuant to Arkansas Act 1003 of 1993 (codified at Ark. Code Ann. § 4-32-101, *et. seq.*). Furthermore, *at the time of the filing of this complaint*, 45 DEVELOPMENT was in good standing, doing business and maintaining its *principal place of business* in Sebastian County, State of Arkansas.

4.      45 DEVELOPMENT's Registered Agent for Service of Process is John D. Alford, 6301 Cliff Drive, Fort Smith, Arkansas  72903.

5.      *At the time of the filing of this complaint*, the following natural and legal persons were, and remain, members of 45 DEVELOPMENT, LLC:

   a.   John Alford Revocable Trust, an *Inter Vivos* trust formed under the laws of the State of Arkansas and doing business in the State of Arkansas;

   b.   Richard C. Srygley, a resident of, and *domiciled*  in, Sebastian County, Arkansas; and,

2

c. Chaco Land Company, LLC, an Arkansas Domestic Limited Liability Company lawfully *organized* in this state pursuant to Arkansas Act 1003 of 1993 (codified at Ark. Code Ann. § 4-32-101, *et. seq.*). Furthermore, *at the time of the filing of this complaint*, CHACO LAND COMPANY, LLC was in good standing, doing business and maintaining its *principal place of business* in Sebastian County, State of Arkansas.

    i. For purposes of jurisdiction, the following are alleged to be members of CHACO LAND COMPANY, LLC *at the time of the filing of this complaint*:

        1. Jeffrey C. Palmer, a resident of and *domiciled* in Sebastian County, Arkansas;

        2. Janet L. Palmer, *Inter Vivos* Trust U/A date December 8, 1997, an *Inter Vivos* trust formed under the laws of the State of Arkansas and lawfully doing business in the State of Arkansas;

        3. Janet L. Palmer also serves as the operating manager of CHACO LAND COMPANY, LLC.

        4. Joshua A. Palmer, *Inter Vivos* Trust U/A/ dated December 11, 1996, an *Inter Vivos* trust formed under the laws of the State of Arkansas and lawfully doing business in the State of Arkansas;

        5. Shawna L. Palmer, *Inter Vivos* Trust U/A dated January 27, 1999, an *Inter Vivos* trust formed under the laws of the State of Arkansas and lawfully doing business in the State of Arkansas.

6.     Separate Defendant CITI TRENDS, INC. is a Delaware Corporation lawfully registered and doing business in Arkansas as CITI TRENDS, INC. d/b/a CITI TRENDS.  A copy of the information maintained by Arkansas Secretary of State referred to as "Exhibit B" and "Exhibit C" in the plaintiffs' prior complaints is incorporated herein by reference.

7.     CITI TRENDS is not only a Citizen of the State of Delaware by virtue of being incorporated there, but is also a Citizen of the State of Georgia as it maintains its *principal place of business* and executive offices in the State of Georgia.  Therefore, CITI TRENDS, INC. is a "Citizen" of both states of Delaware and Georgia for purposes of determining Diversity of Citizenship.

8.     In its home state, the Registered Agent for CITI TRENDS, INC. is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE  19801.

9.     In Arkansas, CITI TRENDS, INC. may be served with process to its Registered Agent, The Corporation Company, 124 West Capitol Ave., Suite 1900, Little Rock, Arkansas 72201.

10.    CITI TRENDS owns and operates over 500 corporate owned retail clothing stores nationwide, one of which is the store at issue in this lawsuit located in Fort Smith, Sebastian County, Arkansas.  Since the local store is a corporate owned and operated retail outlet, the Parent Corporation (CITI TRENDS, INC.) should be held vicariously liable for the acts of its corporate owned stores, subsidiary corporations, companies, agents and employees.

## JURISDICTION AND VENUE

11.     The amount in controversy, exclusive of interest and costs, exceeds $75,000.

12.     None of the plaintiffs are from the same state as any of the defendants.   See *Lincoln Property Co. v. Roche*, 546 U.S. 81 (2005).

13.     Therefore, this Court has jurisdiction over the parties and the subject matter herein pursuant to 28 U.S.C.A. §1332.

14.     The personal injuries, acts, negligence, breach and omissions complained of and set forth in this Complaint at Law occurred in Fort Smith, Sebastian County, Arkansas located in the Western District of Arkansas.

15.     Venue is proper according to 28 U.S.C.A. §1391.

## VICARIOUS LIABILITY

16.     45 DEVELOPMENT should be held vicariously liable for the alleged negligent acts of its owners, agents, or employees acting within the scope of their employment by virtue of vicarious liability of the master for the acts of its servants and pursuant to the common law doctrine of *respondeat superior*.

## STATEMENT OF FACTS

*What Happened:  Plaintiff Curtis Pinson Fell Through a Sheet Metal "Floor"*

17.     The plaintiffs incorporate the foregoing paragraphs as if each one were fully restated herein, word for word.

18.     CURTIS PINSON was catastrophically injured when he fell through a roof at the defendants' job-site on February 21, 2011.  At that time he was employed by Anchor Sign Company (hereinafter referred to as "Anchor") as a master sign electrician.

19.   The location where CURTIS PINSON fell is 4900 101B, Rogers, Sebastian County, Arkansas, known as the "Quarry Shopping Center."

20.   Separate Defendant 45 DEVELOPMENT was the owner of the Quarry Shopping Center at all times relevant to this complaint, acting as the prime contractor for building out leased space for potential tenants at the shopping center.

21.   At the time when CUTRIS PINSON fell, Separate Defendant CITITRENDS was a lessee of commercial retail space at The Quarry Shopping Center from 45 DEVELOPMENT, the lessor and owner and/or had possession and control over the premises.  A copy of the lease is attached hereto as an Exhibit to this Third Amended and Substituted Complaint, and incorporated herein by reference.

22.   45 DEVELOPMENT, along with CITI TRENDS, was building-out leased space for CITI TRENDS to lease and occupy for retail sales.

23.   As part of the build-out and with the approval and foreknowledge of 45 DEVELOPMENT, CITITRENDS engaged a company called Brandrite, also known as "Plain or Fancy Sign Company," by contract to supply and install a lighted sign with the "CITITRENDS" logo for the leased space.  In turn, Brandrite contracted separately with Anchor for the actual installation of the electric signage for CITI TRENDS.

24.   As such, Separate Defendants, 45 DEVELOPMENT and CITI TRENDS were acting as prime and general contractors in concert with each other regarding the installation of the lighted sign.

25.   As indicated above, on or about February 21, 2011, CURTIS PINSON, a master sign electrician, arrived at the project site to install the CITITRENDS sign to the outside of the entrance canopy of the premises.

26.     When he arrived, CURTIS PINSON noted that there was no access panel to the electrical outlet to power the sign, so he attempted to locate the onsite general contractor or electrician who was not present that day.   When he wasn't able to find the onsite supervisor or any representative of the Separate Defendants, he went up on the roof of the building to gain access safely in order to install the sign.

27.     There was no access pane or crawl space.

28.     CURTIS PINSON took a ladder and climbed down to get close enough to the electrical panel to install the sign which he did successfully.   After completing the installation, CURTIS PINSON began to exit the area through the way he entered, which included a surface covered with sheet metal which looked like a floor.

29.     However, when he started ascending back to the roof, CURTIS PINSON's ladder wobbled and he instinctively arrested himself by stepping back down to avoid falling.  When he did so, he stepped on the sheet metal surface which was not supported from underneath.  The sheet metal gave way, and he fell through the roof and landed on his feet causing crushing injuries to his elbow, hip and right foot.

30.     He was immediately transported by ambulance to a hospital in Fort Smith, Arkansas.

31.     Since that time, CURTIS PINSON has under gone at least 6 surgeries to his right foot, has been, and remains, permanently impaired due to this injury and is likely to suffer a 4-6 inch above-the-ankle amputation.

32.     At the current time and since this injury occurred, he suffers and has suffered, chronic and severe pain which he treats with prescription narcotic pain medication.  The medication, however, has been progressively ineffective in controlling his pain, and the side-effects of the medication make it impossible for him to fulfill the requirements of any job because of

dizziness, drowsiness, disorientation, and nausea. If there were work available for such a person as Mr. Pinson, it would require special accommodations such as flexible hours, the ability to take unscheduled breaks, and other restrictions that would make it unreasonable for him to compete in the job market due to pain or the side effects of pain medication.

33.     In addition to the likely amputation of his right foot and the permanent injury he has sustained to his right foot, as stated above, he suffers and continues to suffer severe pain, phantom pain, and chronic pain that makes it impossible for him to continue working at any job even with the aid of analgesic medication.

*Why It Happened:        The Defendants did not have a Code-Compliant Access to the Electrical Panel for the Sign.*

34.     The premises did not have an access panel as required by OSHA, NESC 2007, NEC 2008 and the International Builders Code (IBC 2009) to provide safe access to the electrical outlet in order to complete his job duties.

35.     Without an OSHA-compliant access panel, CURTIS PINSON had no other choice but to create access for himself from on top of the roof with a ladder to drop down roughly 12-14 feet into the space by the electrical outlet so he could connect the sign to the power outlet. The absence of an OSHA-compliant access panel therefore created an unreasonably dangerous and hazardous condition on the premises.

## CLAIMS AT LAW FOR DAMAGES

## UNDER THE LAWS OF ARKANSAS

### *COUNT I*

### *ULTRAHARZARDOUS CONDITIONS, ABSOLUTE LIABILITY*

36.   The plaintiffs incorporate the foregoing paragraphs as if each one were fully restated herein, word for word.

37.   The absence of code-compliant access to the electrical panel in question presented an unreasonably dangerous risk of falling through a false floor to the ground below.

38.   There was no access to the panel provided.   Coupling this fact with the plaintiff's contractual duty to install the sign, the defendants should be held absolutely liable in tort to CURTIS PINSON for the damages he sustained that were proximately caused by the absence of applicable code-compliant access to the electrical panel.

39.   The risk of harm to its employees and subcontractors, and more particularly CURTIS PINSON was vast in comparison to the slight expense or inconvenience to the defendants in remedying the unsafe condition and otherwise complying with applicable standards of conduct and regulations in force at the time.

### *COUNT II*

### *NEGLIGENCE – BREACH OF CONTRACTOR STANDARD OF CARE*

40.   The plaintiffs incorporate the foregoing paragraphs as if each one were fully restated herein, word for word.

41.   CURTIS PINSON states that the damage to his person was due to the carelessness and negligent acts and omissions on part of the defendants.

42.    That Defendant 45 DEVELOPMENT *et al* contracted to lease the above space to CITITRENDS to operate a business.

43.    That Separate Defendant 45 DEVELOPMENT knew or should have known, that CITITRENDS would subcontract work for the premises, and additionally, that CITITRENDS would install their logo sign on the front of the building.

44.    That Separate Defendant 45 DEVELOPMENT knew or should have known that CITITRENDS would subcontract work to another company to have the sign installed and that these employees would need access to the electrical panel to properly install the sign.

45.    That Defendant 45 DEVELOPMENT knew or should have known that an electrical access panel did not exist to provide safe and appropriate access to the electrical component required to install the CITITRENDS sign.

46.    That the defendants individually and collectively had a duty to make sure that the said premises were code compliant and reasonably a safe place to work and to exercise due care for CURTIS PINSON's safety and others who may occasion the site.

47.    That the defendants negligently and carelessly violated the non-delegable duty to see that the work performed by its subcontractor including but not limited to, CITITRENDS, was done with the requisite degree of care, safety and skill.

48.    That the defendants negligently and carelessly failed to exercise the control it retained over subcontractors including, but not limited to, CITITRENDS, by failing to implement or enforce reasonable and safe precautions and procedures to insure the safety of those in the position of CURTIS PINSON, whose work needed access to the electrical panel to install the sign.

49. That the defendants were operating and maintaining the premises in clear code violation of OSHA Regulations, National Electrical Code 2008, The National Electrical Safety Code of 2007, and the International Business Code 2009.

50. That the defendants negligently and carelessly placed CURTIS PINSON in a position of unreasonable danger and risk of injury contrary to the customs, practices, and standards within the electrical sign installation industry.

51. That the defendants negligently and carelessly acquiesced in the negligent and careless methods of work performed by its subcontractors including, but not limited to, CITITRENDS.

52. That the defendants negligently and carelessly breached their respective precautionary duties

53. As a result of the negligence of the defendants and evident violations of the standards of care owed to the plaintiff, the plaintiff suffered damages as a proximate result of those breaches and failures.

*COUNT III*

*NEGLIGENCE - VIOLATION OF THE NATIONAL ELECTRICAL SAFETY CODE of 2007*

54. The plaintiffs incorporate the foregoing paragraphs as if each one were fully restated herein, word for word.

55. The failure to have safe access to the electrical panel at issue in this case is a violation of the National Electrical Safety Code of 2007 (hereinafter "NESC").

56. The National Electrical Safety Code of 2007 was in effect at the time this injury occurred.

57. The State of Arkansas has adopted the construction standards set forth in the NESC, and violation of the NESC is evidence of negligence.

58. A contractor, therefore, has an affirmative duty to comply with the NESC as adopted by the State.

59. That the defendants were acting as contractors for themselves and did not abide by the standards of care required of them as set forth in these allegations.

60. As a foreseeable and proximate cause of the defendants' failure to meet the requirements of the NESC, the plaintiff was injured and is entitled to general, special, and punitive damages.

*COUNT IV*

*NEGLIGENCE - VIOLATION OF THE NATIONAL ELECTIRCAL CODE OF 2008*

61. The plaintiffs incorporate the foregoing paragraphs as if each one were fully restated herein, word for word.

62. The failure to have safe access to the electrical panel at issue in this case is a violation of the National Electrical Code of 2008 (hereinafter "NEC").

63. The National Electrical Code of 2008 was in effect at the time this injury occurred.

64. The City of Fort Smith, Arkansas, relies on the NEC as the standard of care to which the local building codes are measured.

65. A violation of the NEC is evidence of negligence.

66. A contractor therefore has an affirmative duty to comply with the NEC as adopted by the State.

67. That the defendants were acting as contractors for themselves and did not abide by the standards of care required of them as set forth in these allegations.

68.     As a foreseeable and proximate cause of the defendants' failure to meet the requirements of the NESC, the plaintiff was injured and is entitled to general, special, and punitive damages.

*COUNT V*

*NEGLIGENCE - VIOLATION OF THE INTERNATIONAL BUILDERS CODE 2009*

69.     The plaintiffs incorporate the foregoing paragraphs as if each one were fully restated herein, word for word.

70.     The failure to have safe access to the electrical panel at issue in this case is a violation of the International Builders Code of 2009 (hereinafter "IBC").

71.     The International Builders Code of 2009 was in effect at the time this injury occurred.

72.     The City of Fort Smith, Arkansas, relies on the IBC as the standard of care to which the local building codes are measured.

73.     A violation of the IBC is evidence of negligence.

74.     A contractor therefore has an affirmative duty to comply with the IBC as adopted by the relevant governmental entities with jurisdiction over the matter of safety, and at the very least, the IBC as well as the other standards mentioned herein are a de facto statement of the standard of care owed the plaintiff.

75.     That the defendants were acting as contractors for themselves and did not abide by the standards of care required of them as set forth in these allegations.

76.     As a foreseeable and proximate cause of the defendants' failure to meet the requirements of the IBC, the plaintiff was injured and is entitled to general, special, and punitive damages.

*COUNT VI*

*NEGLIGENCE - VIOLATION OF OSHA STANDARDS*

77.   The plaintiffs incorporate the foregoing paragraphs as if each one were fully restated herein, word for word.

78.   The worksite in question, and, in particular, the access to the lighted sign, failed to meet various Occupational Safety and Health Administration Standards (hereinafter "OSHA") that were in force at the time of the injuries complained of herein.

79.   The plaintiffs allege the various OSHA violations as evidence of negligence including, but not limited to, the following:

a.   Violation of OSHA Standard 1926.403(i)(1) which states:

*Working space about electric equipment. **Sufficient access** and working space shall be provided and maintained about all electric equipment to **permit ready and safe operation and maintenance** of such equipment.*

b.   Violation of OSHA Standard 1926.403(i)(1)(i) which states:

*Working clearances. Except as required or permitted elsewhere in this subpart, the **dimension of the working space** in the direction of access to live parts operating at 600 volts or less and likely to require examination, adjustment, servicing, or maintenance while alive **shall not be less than indicated in Table K-1**. In addition to the dimensions shown in Table K-1, workspace shall not be less than 30 inches (762 mm) wide in front of the electric equipment. Distances shall be measured from the live parts if they are exposed, or from the enclosure front or opening if the live parts are enclosed. Walls constructed of concrete, brick, or tile are considered to be grounded. Working space is not required in back of assemblies such as dead-front switchboards or motor control centers where there are no renewable or adjustable parts such as fuses or switches on the back and where all connections are accessible from locations other than the back.*

c.   Violation of OSHA Standard 1926.403(i)(1)(iii) which states:

***Access and entrance to working space**. At least one entrance shall be provided to give access to the working space about electric equipment.*

14

80.   Access to the junction box to connect the power to the sign does not comply with 1926.403(i) because access was not incorporated into the build-out design leaving an unreasonable fall risk to anyone who would need to access the junction box for installation, repair, or disconnect.

81.   The failure to have sufficient access to the junction box to connect the power to the sign does not comply with 1926.403(i)(1)(i) because there was little to **no working clearance** as required by the standard and the accompanying table, Table K-1.

82.   Because there was no passageway designed to give access to the junction box at the sign, the violation of OSHA Standard 1926.403(i)(1)(iii) is a *per se* violation and should be considered by this Court as negligence *per se*.

83.   The foregoing violations are, at the very least, evidence of separate acts of negligence that were the proximate cause of CURTIS PINSON'S injuries and his wife's loss of consortium.

84.   In passing the enabling legislation that created OSHA, Congress expressed its intent and reasons for doing so "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." See 29 U.S.C. 651.

85.   A contractor therefore has an affirmative duty to comply with the OSHA as adopted by the United States.

86.   That the defendants were acting as contractors for themselves and did not abide by the standards of care required of them as set forth in these allegations.

87.   The defendants' failure to meet the requirements of the OSHA is the proximate cause of the plaintiff's injuries to which he is entitled to general, special, and punitive damages.

*COUNT VII*

*CITITRENDS - NEGLIGENCE*

88. The plaintiffs incorporate the foregoing paragraphs as if each one were fully restated herein, word for word.

89. CITITRENDS contracted with Separate Defendant Brandrite to manufacture and transport the CITITRENDS logo sign to the Fort Smith, Arkansas CITITRENDS location.

90. CITITRENDS knew or should have known that Brandrite would subcontract work to another company to have the sign installed and that these employees would need access to the electrical panel to properly install the sign.

91. CITITRENDS knew or should have known that an electrical access panel did not exist to provide safe work environment and to provide appropriate access to the electrical component required to install the CITITRENDS sign.

92. CITITRENDS had a duty to make sure that the said premises were code compliant and reasonably a safe place to work and to exercise due care for CURTIS PINSON's safety.

93. CITITRENDS negligently and carelessly violated its non-delegable duty to see that the work performed by its subcontractor including but not limited to Brandrite was done with the requisite degree of care, safety and skill.

94. That Separate Defendant CITITRENDS negligently and carelessly failed to exercise the control it retained over its subcontractors including, but not limited to Brandrite by failing to implement or enforce reasonable and safe precautions and procedures to insure the safety of those in the position of CURTIS PINSON whose work needed access to the junction box to install the sign.

95.   That Separate Defendant CITITRENDS was operating and maintaining its premises in clear code violation of OSHA, the National Electrician Code 2008, the National Electrical Safety Code of 2007, and the International Business Code 2009.

96.   That Separate Defendant CITITRENDS negligently and carelessly placed CURTIS PINSON in a position of danger or high risk of injury to the contrary of the custom, practices, and standards within the electrical sign installation industry.

97.   That Separate Defendant CITITRENDS negligently and carelessly acquiesced in the negligent and careless methods of work performed by its subcontractors including, but not limited to, Brandrite.

98.   That Separate Defendant CITITRENDS negligently and carelessly breached its own precautionary duty which was the proximate cause of the plaintiff's injuries.

*COUNT VIII*

*CITITRENDS - JOINT AND SEVERAL LIABILITY FOR THE ACTS OF OTHER DEFENDANTS*

99.   The plaintiffs incorporate the foregoing paragraphs as if each one were fully restated herein, word for word.

100.  On information and belief, CITITRENDS acted in with express or implied knowledge of *45 DEVELOPMENT*.

101.  Even if CITITRENDS did not have express knowledge, CITITRENDS had constructive knowledge of the status of the leased premises and therefore should be held jointly, severally, and equally liable for the acts of *45 DEVELOPMENT* as alleged in the foregoing counts.

102.  CITITRENDS had and/or shared possession and control over the premises where the work was taking place and the injury occurred.

*COUNT IX*

*CRISTI PINSON'S CLAIM FOR LOSS OF CONSORTIUM*

103.  Separate Plaintiff CRISTI PINSON incorporates the foregoing paragraphs as if each one were fully restated herein word for word.

104.  CRISTI PINSON is the wife of CURTIS PINSON and was his wife at all times during the times complained of herein.

105.  Because of the foreseeable injuries to CURTIS PINSON proximately caused by the ultrahazardous conditions on the defendants' property, and because of the defendants' negligence, both jointly and severally and in their combined effect, CRISTI PINSON has suffered a loss of consortium, to wit:

    a.      The injuries to her husband have deprived her of his services;

    b.      The injuries to her husband have deprived her of his society;

    c.      The injuries to her husband have deprived her of his companionship;

    d.      The injuries to her husband have harmed their marital relationship.

106.  The foregoing losses are compensable ones as they are proximately caused by the negligence and fault of the defendants.

## DAMAGES FOR CURTIS PINSON

107.  The plaintiffs incorporate the foregoing paragraphs as if each one were fully restated herein, word for word.

108.  CURTIS PINSON prays that judgment be rendered against the defendants in excess of the Federal Jurisdictional Limit for the damages sustained as a result of the Defendants' careless, negligent and unlawful acts and omissions. The elements of damage claimed by CURTIS PINSON, include, but are not limited to:

a.      The nature, extent, duration, and permanency of plaintiff's injuries;

b.      The reasonable expense of any necessary medical care, treatment and services received by plaintiff, including transportation, board and lodging expenses necessarily incurred in securing such care, treatment and services and the present value of such expense reasonably certain to be required in the future.

c.      The pain and suffering experienced in the past and reasonably certain to be experienced in the future;

d.      Loss of enjoyment of life;

e.      The value of any earnings lost and the present value of any earnings reasonably certain to be lost in the future;

f.      The present value of any loss of ability to earn in the future;

g.      The value of any scars, disfigurement, and visible results of his injuries;

h.      The present value of the reasonable expense of any necessary help in his home reasonably certain to be required as a result of his injury.

## DAMAGES FOR CRISTI PINSON

109.  Separate Plaintiff CRISTI PINSON incorporates the foregoing paragraphs as if each one were fully restated herein, word for word.

110.  As a result of the foregoing allegations as to her loss of consortium, Separate Plaintiff CRISTI PINSON is entitled to damages in an amount in excess of $75,000 for said losses.

## PUNITIVE DAMAGES

111.  The plaintiffs, both of them, incorporate the foregoing paragraphs as if each one were fully restated herein word for word.

112.  In addition to compensatory damages for any actual loss that the plaintiffs have sustained, they ask on their own behalves and each other's behalf for punitive damages from the defendants.

113.  The plaintiffs allege the defendants knew or ought to have known, in the light of the surrounding circumstances, that their respective conduct would naturally and probably result in severe injury to CURTIS PINSON and the resulting loss of consortium to CRISTI PINSON and that they continued such conduct in reckless disregard of the consequences from which malice may be inferred.

114.  Specifically, the particular build-out space was the only space at the Quarry Shopping Center site that DID NOT have code-compliant access to the signage junction box.  In this instance, the cost of bringing the site into compliance with well-known applicable and relevant construction standards was *de minimis* compared to the tremendous cost to Curtis Pinson and his wife.  Therefore, punitive damages are warranted for the additional reason that imposing such punitive damages will discourage like conduct in the future and encourage others to abide by safety regulations and standards of practice.  It should go without saying that there were no other similar incidents or injuries of this sort that occurred at these premises which is indicative of the importance of the use of basic safety designs and precautions.

### PETITION FOR JUDICIAL DECLARATION THAT ARKANSAS CIVIL JUSTICE REFORM ACT OF 2003 (ACT 649 of 2003) IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED

115.  The Plaintiffs readopt and reallege each of the foregoing paragraphs as if each were set forth fully herein word for word.

116.  All constitutional challenges as set forth by *Plaintiffs Second Amended Complaint* are

hereby adopted by reference and set forth fully herein, word for word.

## PETITION FOR JUDICIAL DECLARATION THAT ARKANSAS ACT 663 of 1991 (ARKANSAS CODE ANNOTATED SEC. 16-64-122(A)) IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED

117.    The Plaintiffs readopt and reallege each of the foregoing paragraphs as if each were set forth fully herein word for word.

118.    All constitutional challenges as set forth by *Plaintiffs Second Amended Complaint* are hereby adopted by reference and set forth fully herein, word for word.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that they recover judgment on their respective claims against the defendants, jointly and severally, in an amount in excess of that required for federal diversity jurisdiction, including general, special, and punitive damages, exclusive of interest and costs, pre-judgment interest, post judgment interest, and for all other and further relief to which he may be entitled;

FURTHER, the plaintiffs pray the court declare that Act 649 of 2003 of the Arkansas General Assembly unconstitutional on its face and as applied;

FURTHER, the plaintiffs pray the court declare that Ark. Code Ann. 16-64-122(a) is unconstitutional on its face and as applied;

**JURY TRIAL DEMANDED ON ALL ISSUES TRIABLE TO A JURY.**

**TWELVE-PERSON JURY REQUESTED.**

Respectfully Submitted,

CURTIS and CRISTI PINSON,

  *Plaintiffs*.

NIBLOCK LAW FIRM, PLC
George H. Niblock, Ltd.
gniblock@niblocklawfirm.com
Raymond L. Niblock, PA
rniblock@niblocklawfirm.com
Roxanne D. Blake, PA
rblake@niblocklawfirm.com
324 N. College Ave.
PO Drawer 818
Fayetteville, AR 72702-0818
(479) 521-5510 (voice)
(479) 444-7608 (facsimile)
www.niblocklawfirm.com
www.facebook.com/niblocklawfirm



By:     /s/ Raymond L. Niblock            
        Raymond L. Niblock, PA (ABA 94106)
        For The Firm

        *PLAINTIFFS' ATTORNEYS*